FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE NOV 1 6 2017
~Faii kuust~ cq.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 Am on Nov 16, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 93098-8 |
| Petitioner, | EN BANC |
| v. | |
| CHELAN COUNTY DISTRICT COURT, HON. ROY S. FORE, Judge, and ROBERT JAMES BOWIE, Real Party in Interest, | Filed  NOV 1 6 2017 |
| Respondents. | |

GORDON McCLOUD, J.—In 2015, a Chelan County deputy sheriff arrested Robert James Bowie for driving while under the influence (DUI). Bowie received appropriate RCW 46.20.308 warnings about his right to refuse a breath test, signed the implied consent form, and agreed to take that breath test. But 20 minutes later, just before administering the test, the deputy asked Bowie if he would provide a "voluntary" sample. This time Bowie declined. The State charged Bowie with DUI plus a refusal enhancement.

The Chelan County District Court granted Bowie's motion to suppress evidence of his refusal. It ruled that the deputy's statement that the test was

"voluntary" was "inaccurate[ ]" and "potentially" misleading. Clerk's Papers (CP) at 65 (Conclusions of Law 4-6). The Chelan County Superior Court then denied the State's interlocutory petition for a writ of review. CP at 199-200.

We granted direct review of that decision. *State v. Bowie*, 377 P.3d 744 (2016). We now affirm. RCW 7.16.040 governs the availability of the writ of review in superior court. This statutory writ of certiorari is an "extraordinary remedy." *City of Seattle v. Holifield*, 170 Wn.2d 230, 239, 240 P.3d 1162 (2010). Superior court review via writ was not available in this case.

## FACTS

In the early morning of June 14, 2015, Deputy Sheriff Michael Morrison stopped Bowie on suspicion of DUI. Deputy Morrison observed that Bowie's "face was flushed and his eyes were blood shot, droopy and watery." CP at 34. Deputy Morrison ordered Bowie out of the car. Bowie was able to complete two of the three field sobriety tests he attempted and exhibited signs of impairment on both tests. CP at 35.

Deputy Morrison then arrested Bowie for DUI. Once Bowie had been handcuffed and transported to the Chelan County Regional Justice Center, the deputy read him the statutory implied consent warnings and "properly advised [him] of his constitutional rights and the implied consent warning for breath pursuant to

RCW 46.20.308, including advice that [Bowie] had the right to refuse the breath test." CP at 84 (Am. Finding of Fact (AFF) 2). Bowie signed the form acknowledging this. The deputy then asked Bowie if he would submit to that breath test. Bowie "initially stated that he would." CP at 84 (AFF 5). But at the moment that the deputy offered the breath test apparatus to Bowie, Bowie applied lip balm. The deputy therefore started the 15 minute observation period all over again. At the end of that period, the deputy asked Bowie if he would "provide a voluntary sample." CP at 84 (AFF 7). Immediately after that description of the sample, Bowie refused.[1]

## PROCEDURAL HISTORY

The State charged Bowie with DUI plus a refusal enhancement. CP at 29-30. Bowie moved to suppress evidence of his refusal on the ground that the deputy's characterization of the breath test as "voluntary," when refusal actually carries serious adverse consequences, deprived Bowie of his right to make a "knowing and intelligent decision" about taking or refusing that breath test. CP at 55. The district court granted that motion.[2]

---

[1] Bowie had received implied consent warnings twice before: once in 2010 and once in 2008. In 2010, Bowie refused the test; his driver's license was suspended as a consequence.

[2] The State moved for reconsideration. The district court amended its findings of fact and conclusions of law but left its decision to suppress unchanged. CP at 83-88.

3

The State sought interlocutory review via petition for writ of review in the superior court, pursuant to RCW 7.16.040. After briefing and argument, the superior court denied the State's petition due to lack of probable error by the lower court. CP at 195-96. The State then sought direct review in this court, which we granted. *Bowie*, 377 P.3d 744.

ANALYSIS

I.    Introduction

The State argues that there is some tension in our cases about whether all erroneous implied consent warnings require suppression of breath test results and/or breath test refusals. It argues that review of the suppression order in this case would allow us to clarify our holdings on that point; it urges us to adhere to precedent stating that departures from the implied consent warnings may be evaluated for severity of error or prejudice. *E.g.*, *Gonzales v. Dep't of Licensing*, 112 Wn.2d 890, 901-05, 774 P.2d 1187 (1989) (civil action; dicta that no prejudice necessarily required in criminal case "where the officer omits an entire portion of the statutorily mandated warning"); *Lynch v. Dep't of Licensing*, 163 Wn. App. 697, 711, 262 P.3d 65 (2011) (prejudice must be shown in civil case); *State v. Elkins*, 152 Wn. App. 871, 878, 220 P.3d 211 (2009); *Grewal v. Dep't of Licensing*, 108 Wn. App. 815, 822, 33 P.3d 94 (2001). As noted, most of those cases requiring some showing of

4

prejudice to grant relief are civil. But not all. *See State v. Bartels*, 112 Wn.2d 882, 884, 774 P.2d 1183 (1989) (granting relief only to indigent defendants because they were the only ones who might have been prejudiced by inaccurate warning about obtaining additional test "'at your own expense'"). The State concludes that the erroneous advice in Bowie's case was minor and harmless and that the defendant should bear the burden of proving that such minor errors caused prejudice.

In contrast, Bowie argues that the district court's suppression decision is not a reviewable interlocutory order under the strict standards of RCW 7.16.040, governing availability of review. He continues that if we reach the merits of the substantive arguments in this case, we should affirm. He urges us to adhere to our line of cases holding that erroneous warnings that understate the adverse consequences of a DUI suspect's decision to refuse the breath test require automatic suppression. *E.g.*, *State v. Whitman County Dist. Court*, 105 Wn.2d 278, 286-88, 714 P.2d 1183 (1986); *State v. Turpin*, 94 Wn.2d 820, 827, 620 P.2d 990 (1980).

The State is correct that there is some tension between these two lines of authority where, as here, it's a close call whether the erroneous warning influenced the defendant. For that reason, as discussed below, we agree with Bowie that the writ of review was not available under RCW 7.16.040, which (as relevant here) limits review to decisions where the trial court "act[ed] illegally."

5

II.   RCW 7.16.040 governs the availability of interlocutory review of the district court's decision in the superior court via writ of review; since the district court did not "act[] illegally," that writ was unavailable

RCW 7.16.040 sets forth the prerequisites to interlocutory superior court review of the district court's suppression order. That statute provides that "[a] writ of review shall be granted" when a lower court (1) "has exceeded [its] jurisdiction" or is "acting illegally" and (2) no appeal or "any plain, speedy and adequate remedy at law" exists. RCW 7.16.040. In this case, the district court clearly had jurisdiction over Bowie's suppression motion; equally clearly, no other speedy pretrial remedy is available. So the question here is whether the district court "act[ed] illegally."

In *Holifield*, we provided a "'simple and straightforward'" definition of these words, which, until that point, had been "far from a model of clarity." 170 Wn.2d at 245, 241 (quoting Geoffrey Crooks, *Discretionary Review of Trial Court Decisions under the Washington Rules of Appellate Procedure*, 61 WASH. L. REV. 1541, 1554 (1986)). We borrowed language from RAP 2.3(b)(1)-(3) and RAP 13.5(b) and stated that a lower court is "acting illegally" for purposes of RCW 7.16.040 when it "(1) has committed an obvious error that would render further proceedings useless; (2) has committed probable error and the decision substantially alters the status quo or substantially limits the freedom of a party to act; or (3) has

6

so far departed from the accepted and usual course of judicial proceedings as to call for the exercise of revisory jurisdiction by an appellate court." *Id.* at 244-45.

These are very demanding standards. They make sense, though, because review as a matter of right is available if the suppression order effectively terminates the government's case (RALJ 2.2(c)(2); RAP 2.2(b)(2)); but where, as here, suppression is less critical to the outcome, the trial should typically proceed uninterrupted. Thus, a district court that relies on existing case law has not "act[ed] illegally" so its decision is appropriately shielded from immediate interlocutory RCW 7.16.040 review.

The district court in this case relied on just such existing case law. It applied one of two possible lines of applicable precedent—the line that requires automatic suppression of refusal evidence due to erroneous warnings (without proof of prejudice). CP at 86; *Whitman County*, 105 Wn.2d at 286-88; *Turpin*, 94 Wn.2d at 827. In reviewing that decision, the superior court correctly concluded that "[b]ased on the current nature of the law in the area of DUI implied consent and breath testing, the State has only shown possible error." CP at 195-96. Bowie is therefore correct that under RCW 7.16.040, the superior court did not err in denying the State's petition.

7

To be sure, review is available in our court. Under RAP 2.3(d), appellate courts may accept review of "a superior court decision entered in a proceeding to review a decision of a court of limited jurisdiction" if that decision "involved" "a significant question of law under the Constitution of the State of Washington or of the United States" or "involves an issue of public interest which should be determined by an appellate court." RAP 2.3(d)(2), (3). What we are reviewing, though, is the superior court's decision. In this case, the superior court decided it lacked jurisdiction to issue a writ. Since that decision was correct, our review of this interlocutory appeal ends.

This is clear from our decision in *Commanda v. Cary*, 143 Wn.2d 651, 655, 23 P.3d 1086 (2001). In that case, the defendants argued that the portion of the Spokane Municipal Code governing DUI sentencing violated the constitutional right to equal protection and that the DUI charges against them should therefore be dismissed. *Id.* at 654. The municipal court denied the motions. The superior court granted writs of review and reversed; it ruled that the ordinance at issue was unconstitutional. We then granted direct review and reversed the superior court. We did not, however, rule on the merits of the equal protection clause issue. Instead, we held that the defendants failed to establish the statutory prerequisites to issuance of the writ by the superior court. For that reason, the superior court erred in granting

8

review and abused its discretion by denying a motion to quash the writ. *Id.* at 653, 657. *Commanda* thus stands for the rule that in cases like this, we review the superior court's decision on whether it had authority to grant or deny the interlocutory writ of review first. *Accord Holifield*, 170 Wn.2d at 246 (writ of review should not issue to review municipal court's suppression order that, if erroneous, "would constitute at most a mere error of law that, without more, would not justify issuance of a writ of review"). Thus, the superior court here properly denied the interlocutory writ of review.

## CONCLUSION

We hold that RCW 7.16.040 governs the availability of the writ of review in superior court. Under RCW 7.16.040, the superior court correctly denied the petition to issue the writ. We therefore affirm.

_____
George McCloud, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Madsen, J.

_____
Stephens, J.

_____

_____
Yu, J.

*State v. Chelan County Dist. Court et al.*

No. 93098-8

GONZÁLEZ, J. (dissenting in part)— RCW 46.20.308 requires officers to

inform drivers suspected of driving under the influence that if they refuse a breath

test, there are potential consequences; this is known as "the implied consent

warning." In this case, an officer gave Robert Bowie the correct implied consent

warning. After Bowie delayed taking the test, the officer also described the test as

"voluntary." Bowie's refusal to perform a breath test should not have been

suppressed unless the use of the word "voluntary" was actually misleading. The

majority would rather leave the important question of who has the burden to prove

prejudice from an inaccurate implied consent warning unresolved. However, this

is the reason we granted review.[1] We have the authority and responsibility to make

---

[1] *State v. Bowie*, 377 P.3d 744 (2016). Specifically, we granted the State's statement of grounds for direct review, pursuant to RAP 4.2(a)(3) (conflict among decisions) and RAP 4.2(a)(4) (fundamental and urgent issue of broad public import), in addition to its motion for discretionary review detailing the considerations laid out in RAP 2.3(d), pursuant to RAP 17.3(c).

clear that minor errors do not warrant automatic suppression. I respectfully dissent.

Bowie refused to take the breath test after the officer's implied consent warning, but the district court suppressed the evidence of Bowie's refusal because it found that the implied consent warning was "potentially" misleading. Clerk's Papers at 65. The State filed a writ of review. The superior court denied the writ, and the State filed a direct appeal to this court. I agree with the majority, the superior court correctly denied the writ of review because the district court did not "act[] illegally." RCW 7.16.040. As the majority recognizes, the district court relied on "one of two possible lines of applicable precedent," specifically the line that requires suppression of refusal evidence without proof of prejudice. Majority at 7. The other line provides that if an error is minor, then the defendant should bear the burden of proving such minor errors caused prejudice. By relying on a line of precedents that requires automatic suppression, the district court did not commit probable error that would substantially alter the status quo. *City of Seattle v. Holifield*, 170 Wn.2d 230, 244-45, 240 P.3d 1162 (2010) (describing when a district court is "acting illegally"). This is where the majority's analysis ends, but we seldom review a case merely to reaffirm settled law.

The substantive questions are fully briefed, and a definitive interpretation promotes judicial economy and uniformity in our law. This is why we granted review. RAP 2.3(d) states:

> Discretionary review of a superior court decision entered in a proceeding to review a decision of a court of limited jurisdiction will be accepted only:
>
> (1) If the decision of the superior court is in conflict with a decision of the Court of Appeals or the Supreme Court; or
>
> (2) If a significant question of law under the Constitution of the State of Washington or of the United States is involved; or
>
> (3) If the decision involves an issue of public interest which should be determined by an appellate court; or
>
> (4) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by the court of limited jurisdiction, as to call for review by the appellate court.

When the requirements of RAP 2.3(d) are satisfied, we may grant review to rule on the important questions "involved," regardless of whether the writ should have issued under RCW 7.16.040. The questions "involved" here are whether the implied consent warnings were erroneous, whether any such error requires automatic suppression, and whether any such error is of constitutional magnitude. These questions are important, affect a multitude of cases each year, have statewide significance, and implicate the Constitution.

Failing to review the district court's decision to suppress here leaves future district courts to decide which of two applicable precedents to follow. Inevitably,

*State v. Chelan County Dist. Court et al.*, No. 93098-8 (González, J., dissenting)

the district courts will dole out justice unequally. The issues in this case are significant—without guidance, officers will feel compelled to repeat their implied consent warnings whenever a benign error is made and stay silent after an implied consent warning until a breath test is complete, or refused, to avoid the possibility of automatic suppression of the evidence. *See* State's Statement of Grounds for Direct Review at 6-7. There is no compelling reason to limit our review, even though the writ was appropriately denied under RCW 7.16.040.[2]

Like the officer's use of the word "voluntary," the majority's reliance on *Commanda v. Cary* is potentially misleading. 143 Wn.2d 651, 23 P.3d 1086 (2001). While perhaps instructive, *Commanda* in no way restrains our ability to review the questions before us. There may be prudential reasons for the court to decline to reach other issues in specific cases, but no such reason is present here.[3] *See generally City of Tacoma v. Luvene*, 118 Wn.2d 826, 841, 827 P.2d 1374

---

[2] *See generally City of Seattle v. Williams*, 101 Wn.2d 445, 456, 680 P.2d 1051 (1984) (distinguishing between review criteria under RCW 7.16.040 and appellate review of a superior court decision on a writ of review under RAP 2.3(d)); *Alter v. Issaquah Dist. Court*, 35 Wn. App. 590, 668 P.2d 609 (1983) (per curiam) (separately analyzing whether the defendant's petition met writ criteria under RCW 7.16.040 and whether the defendant stated a basis for appellate review under RAP 2.3(d)). *See also City of Mount Vernon v. Mount Vernon Mun. Court*, 93 Wn. App. 501, 508-09, 973 P.2d 3 (1998) (granting discretionary review because of the "public interest," RAP 2.3(d), of the recurring "stuck ticket" issue raised).

[3] The majority downplays the importance of reviewing the legal questions when a suppression ruling is "less critical to the outcome." Majority at 7. Notably, however, principles of judicial economy do not support partial review of the questions before us. *See Minehart v. Morning Star Boys Ranch, Inc.*, 156 Wn. App. 457, 467, 232 P.3d 591 (2010) ("Promotion of judicial economy is the primary reason that interlocutory review is not favored." (citing *Maybury v. City of Seattle*, 53 Wn.2d 716, 721, 336 P.2d 878 (1959))).

4

*State v. Chelan County Dist. Court et al.*, No. 93098-8 (González, J., dissenting)

(1992) ("no prudential purpose is served by refusing to entertain a claim that an ordinance is overbroad"). In *Commanda*, for example, it would have been imprudent for the court to review the question underlying the writ challenge because the defendants lacked standing to challenge sentences that were not imposed on them. 143 Wn.2d at 653 ("During the pretrial stage, . . . defense counsel asserted that the DUI [(driving under the influence)] sentencing scheme's enhanced penalty . . . violated equal protection."). Thus, the court declined to review the equal protection challenge.[4]

Finally, the court is insulating the questions "involved" from review. The State is now required to go to trial without the evidence of refusal and its appeal is barred in the event of an acquittal. RAP 2.2(b). Future defendants will be left with a precarious decision suggesting that a district court may automatically suppress evidence when an implied consent warning is slightly inaccurate and may not bother to argue they were prejudiced by the inaccuracy. The two applicable precedents will coexist until a district court denies a motion to suppress another defendant's evidence of refusal. Even then, it will take a lengthy appeal and likely

---

[4] *Commanda*, if even relevant, weighs in favor of reviewing the remaining issues in this case. While legal questions concerning sentencing are not properly presented at the pretrial stage, the State sought review at the pretrial stage here because the district court's automatic suppression will undoubtedly affect the result of the trial proceedings. *Cf. Blomstrom v. Tripp*, __ Wn.2d __, 402 P.3d 831, 841 (2017) (distinguishing *Commanda* because "the petitioners challenge *pretrial* orders, not postconviction consequences").

5

this court's discretionary review before the issue is settled. It should be no surprise

then that this area of law is unclear and our precedents are in tension. For this

reason, I feel it is my duty to answer the questions before us.

I.      Under Our Prior Precedent, the Officer's Advice That the Breath Test Was "Voluntary" Was Potentially Misleading

A. *To be valid, implied consent warnings must substantially comply with the wording of the statute and not mislead—meaning that they cannot minimize or overstate the consequences of refusal*

The validity of an implied consent warning is a question of law, which we

review de novo. *State v. Matilde Morales*, 173 Wn.2d 560, 567, 269 P.3d 263

(2012). Washington's implied consent statute provides:

> Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath for the purpose of determining the alcohol concentration in his or her breath if arrested for any offense where . . . the arresting officer has reasonable grounds to believe the person [is driving under the influence] . . . .

RCW 46.20.308(1). Under the statute, law enforcement cannot *compel* breath

testing. Instead, motorists retain the right to withdraw their implied consent and

refuse the test. *State v. Baird*, 187 Wn.2d 210, 222-23, 386 P.3d 239 (2016)

(plurality opinion).

But, refusal has consequences. Accordingly, the statute requires law

enforcement to tell a driver about those adverse consequences of refusal, including

the fact that his or her driver's license may be revoked for at least a year and that

the refusal may be used against that driver in a criminal trial. RCW 46.20.308(2). Our case law also requires accurate warnings of those adverse consequences resulting from refusal. We have held that accurate warnings about the right to refuse are necessary to enable the defendant to make a "knowing and intelligent judgment" about whether to take or refuse the breath test. *State v. Whitman County Dist. Court*, 105 Wn.2d 278, 282, 714 P.2d 1183 (1986).

We have further held that the change of even a single word, from "may" to "shall," can deprive the driver of the right to refuse. The deprivation of rights occurs when "the warning actually read to the accused by the officer contains a more coercive impact than that required by statute." *Id.* at 285-86.

In fact, we have stated that we require "strict adherence" to the warning language in the implied consent statute to meet that knowing-and-intelligent requirement.[5] *State v. Bostrom*, 127 Wn.2d 580, 587, 902 P.2d 157 (1995). And we have often imposed the remedy of automatic suppression for noncompliance with the statutory language.[6]

---

[5] *See Connolly v. Dep't of Motor Vehicles*, 79 Wn.2d 500, 503, 487 P.2d 1050 (1971); *Cooper v. Dep't of Licensing*, 61 Wn. App. 525, 529, 810 P.2d 1385 (1991) (administrative case; holding officers "to a strict standard of accuracy" with regard to the statutory warnings will provide incentive to "phrase their advice in the language of the statute").

[6] What the court granted in the ruling depended on the posture of the case. Remedies have included suppressing evidence of a breath test or of the defendant's refusal, *see, e.g.*, *Whitman County*, 105 Wn.2d at 287, reversing an administrative decision to revoke the defendant's driver's license, *see, e.g.*, *Cooper*, 61 Wn. App. at 529, and reversing a conviction and remanding for a new trial, *see, e.g.*, *State v. Turpin*, 94 Wn.2d 820, 827, 620 P.2d 990 (1980).

B. *Errors in implied consent warnings can be major or minor; major errors are presumptively prejudicial, while minor errors are not*

In 2004, the legislature amended the implied consent statute to say that the statutory warnings need only be given "in substantially the following language." LAWS OF 2004, ch. 68, § 2 (codified at RCW 46.20.308(2)). In *State v. Murray*, we recognized, in light of that amendment, that certain minor variances from the statutory warnings are acceptable. 187 Wn.2d 115, 124-25, 384 P.3d 1150 (2016). We defined such a minor variance as one that "(1) does not omit any relevant portion of the statute, (2) accurately expresses the relevant portions of the statute, and (3) is not otherwise misleading." *Id.* at 125. Applying this standard, we held that the deviation from the statute at issue in *Murray* was minor—because it gave the driver completely correct information, despite failing to include all the language of the statutory warning. *Id.* at 126.[7]

*Murray*'s distinction between major errors and minor errors was not new— we recognized the distinction before. We have ruled that erroneous implied consent warnings required relief where they were actually misleading, in that they were inaccurate and we believed the inaccuracy likely affected the defendant's

---

[7] In *Murray*, state troopers failed to include statutorily required warnings about the legal consequences that could result from breath test results over the legal limit for the psychoactive compound in marijuana (tetrahydrocannabinol, or THC). But at that time, no breath test was capable of measuring THC concentrations. We held that the troopers gave warnings "that conformed to the ability of the breath test but not to the specific language of the statute." *Murray*, 187 Wn.2d at 118.

choice. *See, e.g., State v. Bartels*, 112 Wn.2d 882, 889, 774 P.2d 1183 (1989) (otherwise proper implied consent warning invalidated when indigent person was erroneously told that additional testing would be "'at your own expense'"— nonindigent person receiving the same warning did not get relief); *Whitman County*, 105 Wn.2d at 287-88 (warnings invalidly overstated consequences for respondents who were told that refusal "shall," not "may," be used against them); *Cooper v. Dep't of Licensing*, 61 Wn. App. 525, 528, 810 P.2d 1385 (1991) (warnings invalidly minimized consequences where officer implied that license might be revoked for less than the mandatory minimum time); *Welch v. Dep't of Motor Vehicles*, 13 Wn. App. 591, 592, 536 P.2d 172 (1975) (warnings invalid where officer erroneously suggested license revocation was not mandatory).

We have treated minor errors differently. When "no different meaning is implied or conveyed" by the error in word choice, Washington courts have often found that "the defendant is not misled"—even before the 2004 amendment. *Town of Clyde Hill v. Rodriguez*, 65 Wn. App. 778, 785, 831 P.2d 149 (1992) (modification in wording of implied consent warning so minor that defendant could not have been misled); *e.g., Bartels*, 112 Wn.2d at 889 (nonindigent defendants not entitled to relief since the erroneous "at your own expense" warning would not have misled them); *see also Gonzales v. Dep't of Licensing*, 112 Wn.2d

*State v. Chelan County Dist. Court et al.*, No. 93098-8 (González, J., dissenting)

890, 901, 774 P.2d 1187 (1989) (civil case; "at your own expense" language not misleading for nonindigent defendants).

### C. The officer's addition of the word "voluntary" to the statutory warnings was a minor error; hence, it is not presumptively prejudicial

In this case, the officer added the nonstatutory description of the breath test as "voluntary." The district court ruled that the descriptor "voluntary" was "potentially" misleading and suppressed the evidence of Bowie's refusal. It did not make a factual finding. Bowie argues that use of the word "voluntary" was misleading as a matter of law and requires relief. He analogizes to our decisions holding certain misadvice minimized or overstated consequences of refusal so much that it constituted automatic, prejudicial error. *E.g.*, *Whitman County*, 105 Wn.2d at 286-88; *State v. Turpin*, 94 Wn.2d 820, 827, 620 P.2d 990 (1980). But the error in this case was not as severe as those errors. Characterizing the breath test as "voluntary" was, at most, ambiguous. Bowie's prejudicial-error-as-a-matter-of-law argument therefore fails.[8]

---

[8] Bowie also makes a textual argument that the phrase "in substantially the following language" from RCW 46.20.308(2) applies only to the warnings listed in the statute *after* that phrase. He contends that all warnings listed before that phrase must match the statutory language exactly. Br. of Resp't Bowie at 21-22. But we have never interpreted RCW 46.20.308 this way. Indeed, we recently addressed the meaning of this phrase in *Murray*. And, although we did not address this argument specifically, we made it clear in reaching our decision that we were "considering the statute as a whole." *Murray*, 187 Wn.2d at 124 (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We went on to state, "Read as a whole, the legislature has made its intent clear:  the arresting officer does not have to perfectly incant the words of the implied consent statute; he or she must simply give the accused a relevant warning in substantially the statutory language." *Id.*

The State argues that use of the word "voluntary" was presumptively accurate, or at least benign, and requires no relief. The State asserts that the word "voluntary" is the "'linguistic equivalent'" of the statutory phrase "right to refuse," and thus that the officer's use of the word "substantially" complied with the statute.[9] The State points to dicta in our cases that characterize the implied consent process—and its "right to refuse" testing—as "voluntary." *E.g.*, *City of Seattle v. St. John*, 166 Wn.2d 941, 944, 215 P.3d 194 (2009) (noting that defendant "refused the voluntary blood alcohol test" after being read the "statutory warning regarding implied consent blood alcohol tests"). Essentially, the State is using this analogy to show that the word "voluntary" means "that the officer is not going to physically force the person to provide a breath sample." Br. of Pet'r at 19. But that is not the implied consent warning that the legislature requires. It requires officers to give implied consent warnings that accurately advise the individual of the consequences of taking or declining the test, not advice that suggests that the defendant will be physically forced to take it. The State's accurate-or-benign-as-a-matter-of-law argument therefore also fails.

---

[9] Br. of Pet'r at 14-15 (quoting *Rodriguez*, 65 Wn. App. at 785).

Instead, we have an erroneous warning that could be taken as minimizing the adverse consequences of refusal, but might not necessarily be taken that way. In that sense, it is not a major error but a minor one.

We have faced this situation before. In such cases, we have granted relief only to the people that we believed would actually be misled. *Bartels*, 112 Wn.2d at 889 (adding misleading language about the right to additional testing "at your own expense" to "an otherwise proper informed consent warning" invalidated warning, but only as to indigent defendants who are the group most likely to be adversely affected). That is not this case.

I next turn to the question of how to decide whether Bowie was likely misled. If Bowie was misled, he is entitled to relief.

II.    Although the Error Here Is Minor and Hence Not Presumptively Prejudicial, This Defendant Is Entitled To Show That He Was Likely Misled

A. *This is a factual question*

Although the error in this case is minor and not presumptively prejudicial as a matter of law, it may have caused Bowie prejudice as a matter of fact. The difference between warnings that are statutorily incorrect but not misleading as a matter of law, *e.g.*, *Murray*, 187 Wn.2d 115; *Bartels*, 112 Wn.2d at 889-90 (nonindigent defendants), and warnings that are misleading as a matter of law, *e.g.*,

12

*State v. Chelan County Dist. Court et al.*, No. 93098-8 (González, J., dissenting)

*Bartels*, 112 Wn.2d at 887 (indigent defendants); *Whitman County*, 105 Wn.2d 278, is one of degree. As the district court judge ruled, the error in this case was not one of the worst and was not necessarily coercive or misleading as a matter of law. It was ambiguous and "potentially" misleading—depending on whether and how it actually affected the defendant's decision-making.

This is a factual question—not a legal one. Indeed, the district court concluded that "[g]auging the impact of the past warnings on the defendant's ability to make a knowing and intelligent decision herein on June 15, 2015, would be difficult and speculative." Clerk's Papers at 86-87. I agree, such a decision may be difficult to make. But the district court will not speculate. It will take evidence and render a decision accordingly.

B. *For a minor deviation like this, the defendant must prove prejudice*

The parties argue about who would bear the burden of proof on this factual question. In some implied consent DUI cases, we have applied the constitutional harmless error standard announced in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Chapman* presumes that constitutional errors cause prejudice and places the burden on the State to prove any such error harmless beyond a reasonable doubt. *E.g.*, *Bartels*, 112 Wn.2d at 890 (explicitly applying *Chapman* standard to the category of indigent defendants most likely

13

*State v. Chelan County Dist. Court et al.*, No. 93098-8 (González, J., dissenting)

impacted by the erroneous "at your own expense" warning); *Turpin*, 94 Wn.2d at

823 (noting that Turpin was asserting a statutory, not constitutional, right but still

declining to require her to show prejudice).

In such cases in which prejudice is presumed, the error is usually a major

deviation from the statutory warnings or implicated constitutional rights. *See*

*Morales*, 173 Wn.2d at 576 (warnings implicated defendant's constitutional rights

to self-defense and due process); *Bartels*, 112 Wn.2d at 887 (warnings error

involving court rule that "'incorporates constitutional requirements'" related to the

right to self-defense (quoting *State v. Kelly*, 102 Wn.2d 188, 200, 685 P.2d 564

(1984))); *Turpin*, 94 Wn.2d at 826 (right to self-defense in a negligent homicide

case). In fact, a major error in an implied consent warning can be so misleading as

a matter of law that it deprives the defendant of fair notice about the consequences

of testing and refusal and, hence, implicates due process protections. *See South*

*Dakota v. Neville*, 459 U.S. 553, 566, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983) (an

"implicit promise to forgo use of evidence that would unfairly 'trick' respondent if

the evidence were later offered against him at trial" could violate a defendant's due

process rights); *Bostrom*, 127 Wn.2d at 591 (warnings could violate due process if

they were "implicitly misleading" and thus created a situation that was

"fundamentally unfair"). Our decisions requiring automatic suppression for major

errors no doubt reflect this concern.

14

On the other hand, as the State points out, in other implied consent warning cases, we have required the defendant to show that he or she was prejudiced by the error. *Bartels* is a criminal case declining to apply *Chapman* harmless error review to the defendant category least likely to have been adversely affected by the erroneous warning. *Bartels*, 112 Wn.2d at 890. *State v. Templeton* is another, albeit in a slightly different context. 148 Wn.2d 193, 199-200, 59 P.3d 632 (2002) (applying nonconstitutional harmless error review in criminal DUI suppression case to violations of CrRLJ 3.1, advisement of right to counsel).

There is certainly some tension between our implied consent cases applying *Chapman* or *Chapman*-like review, and those applying nonconstitutional harmless error review. We presumed prejudice when the error was major. We declined to presume prejudice when the deviation from the statutory language was minor. *E.g., Murray*, 187 Wn.2d 115; *Bartels*, 112 Wn.2d at 894 (the nonindigent defendant category).

We should continue this pattern and make it explicit: where an error is only potentially misleading, the defendant bears the burden of proving, by a preponderance of the evidence, that the error likely impacted his or her decision about taking or declining the breath test. District courts need to make a finding regarding whether the defendant was actually misled.

CONCLUSION

RCW 7.16.040 may govern the availability of the writ of review in superior court, but RAP 2.3(d) governs the availability of discretionary review in our court. Under RCW 7.16.040, the superior court correctly denied the petition to issue the writ. Under RAP 2.3(d), however, our review of the underlying issues is clearly appropriate, and we should address the issues from the lower court decision "involved" on the merits. Bowie is entitled to argue that the inclusion of "voluntary" in the implied consent warning prejudiced him, but the evidence of his refusal should not be automatically suppressed without that factual finding. I respectfully dissent.

González, J.

Wiggins, J.